McKinney, J.,
delivered the opinion of the Court.
This is, to ns, a case of tbc first impression. The *116 facts, as alleged in the declaration and proved, are as follows :
Roberts was a Constable; and certain executions were placed in his hands, as such, against Westbrook. Roberts levied the executions on a negro girl, as the property of Westbrook. On the day of sale, the slave was struck off to one Jarrett, who was the last and highest bidder, at the price of six hundred and five dollars. But Jarrett, the purchaser, refusing to pay the amount of his bid, Roberts afterwards put up the slave for sale, and re-sold her at public auction, to one Adams, who was the last and best bidder, at the price of five hundred dollars, being one hundred and five dollars less than the amount of the bid made by Jarrett; and Adams having paid the money, the slave was delivered to him, as purchaser. Out of the five hundred dollars received from Adams, Roberts satisfied the executions in his hands, and returned the same, leaving a surplus, which it is not denied, was accounted for to Westbrook, the defendant, in the execution.
The present suit is brought against the Constable by Westbrook, upon the assumption, that it was his official duty to have compelled Jarrett, the first purchaser, to have paid, for the benefit of Westbrook, the defendant in the executions, the sum of .one hundred and five dollars, the difference between the amount of his . bid, and the sum for which the slave was re-sold. And the Circuit Judge, being of his opinion, and having so instructed the jury on the trial, verdict and judgment were given for the plaintiff; to reverse which, the case lias been brought to this Court.
*117 We are aware of no principle, or authority, upon which this action can be maintained.
The case of Shaw vs. Smith, 9 Merger’s Report, 97, is no authority for the action. That case proceeds upon the ground that the sale was complete, by the delivery of the slave to the purchaser at the execution sale. In such case, the officer having improvidently parted with the possession of the property, it may be conceded that he might maintain an action against the purchaser for the recovery of the price. By delivery of the property to the buyer without receiving the purchase money, the officer becomes personally liable for the same. And having had a special property in the slaves which he parted with, by the delivery and affirmance of the sale, he may well be held entitled to sue for the purchase money.
But, it is contrary to the duty of the officer to part with the possession of the property until the money is paid. It is incumbent on him, by law, to have the money ready to tender to the plaintiff in the execution; on the return day of the writ, if, by the exercise of due diligence, this may be done. Hence, in case the person to whom the property is struck off, refuses to pay the money, the officer should set up the property again, and re-sell it, in order that he may be able to fulfill the command of the writ. If ho voluntarily neglect to do so, he is in default.
The delivery of the property, without receiving the money, is at the peril of the officer; it is a violation of the rights of the judgment creditor, who cannot be delayed to await the tedious process of a suit by the officer, against the purchaser, for the recovery of the money.
If then, it be the positive duty of the officer to re-sell *118 immediately, on failure of the first bidder to pay the money, how is it possible to maintain this action ?
The refusal of the first bidder to pay the money, involves the officer in no default. It is a matter beyond his power of control; if it be a wrong, it is one that the officer is not to stop to have redressed. The extent of his duty, in such a case, is to hasten, as soon as may be, to re-sell the property and realize the money, in obedience to the command of the writ. It would be most unreasonable and unjust to hold that the officer who was in no default, and who had fully and exactly performed the duty enjoined on him by law, should be required to take upon himself the trouble and expense of prosecuting an action against the first bidder, in a case like the present, for the sole benefit of the defendant in the execution, even if it were to be admitted that such an action would lie. But we are not prepared to make such an admission. The refusal of the first bidder to pay the money is not treated by the law as a wrong, so far as the officer is concerned. Instead of so treating it, the law enjoins it on the officer to proceed to sell the property again. Thus waiving the duty of any proceeding, by the officer against the party for his refusal to pay the money. Whether such refusal can be viewed as a legal wrong to the defendant in the execution, is a question not necessary to be now decided.
To avoid being misunderstood however, it may be proper to remark, that, inasmuch as there is no privity between the execution debtor, and the first bidder, if it were to be conceded that the former was entitled to redress against the latter, it must be sought through the officer. But even upon this concession, the execution *119 debtor could demand nothing more of the officer,, as it seems to us, than the mere use of his name, in the prosecution of a suit, to be conducted by the former, for his own benefit. But we are not prepared to admit that the execution debtor, even in his mode, could entitle himself to any redress. The charge assumes erroneously as we think, that the Sheriff or Constable is tbe agent of both parties — that the Sheriff occupies the same relation to the parties, as an auctioneer. This is a mistake. The Sheriff is the ministerial officer of the law ; the agent of the Court, to carry into effect its judgment. The line of his duty is marked out by the law. He acts independently of the parties, they have no right or power of control over him, and so long as he confines himself within the proper scope of his authority, doing in a proper manner, what he is required to do by the mandate of the law, he cannot be held amenable for the consequences, however injurious they may prove to either party. But for negligent or wrongful acts, as well of omission as of commission, to the prejudice of either party, he is undoubtedly answerable.
We think the charge is also erroneous, in applying to the case of an execution sale the principle applicable to commercial transactions, and sales of goods between individuals, namely: That where the sale of goods is complete, and the title of goods properly passed to the buyer, if the latter unreasonably refuse to accept and pay for the goods, the seller, after notice to the buyer, and after allowing a reasonable time to elapse, may proceed to resell the goods, and hold the buyer responsible for the difference between the original price and *120 the net sum realized on the re-sale: McClure vs. Williams, 5 Sneed, 718 ; Story on Sales, sec. 402. Execution sales of goods are made in return, without the participation of the parties. The officer empowered to sell, has no discretion. By the stern command of the writ he is required to have the money by the return day.
Hence, he is not to deliver the goods, so as to pass the title to the person to whom they were struck off, until he shall have paid the money, and if he fail or refuse to do so, the- imperative duty of the officer, as we have seen, is to put up the property again and re-sell it : See Downing vs. Brown & Barber, Hardin, 181.
Judgment reversed.